Joe P. Josephson, Esq.,
Josephson & Associates, PC
912 West 6th Avenue
Anchorage, Alaska  99501
Tel. (907) 276-0151
Facsimile (907) 276-0155

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PAMELA R. ESTES,         )<br>                          )<br>       Plaintiff,        )<br>                          )<br>    v.                    )<br>                          )<br> WAL-MART STORES,         )<br> INC.,                    )<br>                          )<br>       Defendant.         )<br>_____) | Case No. 3:06-cv-00082-TMB |

**TRIAL BRIEF FOR THE PLAINTIFF**

**Statement of Facts.**

Pamela Estes has lived in Alaska for approximately 20 years.

A high school graduate, Pamela, at the time of her injury at Wal Mart, was recuperating from back surgery[1]. She held the manager's position at a Fred Meyer store's natural foods department, but was excused from duty because of the need to recuperate. She had progressed to the position as a departmental manager through 15 years of service to the company

---

[1] Spinal fusion.

and through "certificate type" courses in nutrition which she had taken through her employment.

As she approached the Thanksgiving holiday in 2005, Pamela was in a good frame of mind. While she had sustained an on-the-job injury, and had undergone surgery, she was diligently engaged in physical therapy, thrice weekly, and she was "just getting to the point" where she "could function better and get back to work."[2]

But, on the day after Thanksgiving, while shopping at Wal Mart with her aunt for DVDs, Pamela fell near the cash register as her aunt was paying the cashier. Pamela was not carrying anything -- even a purse -- at the time of her fall.

The immediate cause of her fall was a plastic hanger on the floor, in the midst of a customer walking aisle, upon which her left leg stepped. The hanger was "clear" and "blended right in with the floor."[3] Right away, Pamela's right leg felt numb and she could not get up.[4]

Although Pamela does not know how long the hanger was on the floor, she testified at her deposition that she knows

> "that if it had been dropped or fallen off on a counter prior to our stepping up to the register we would have heard it.[5]

---

[2] Deposition at 11.
[3] Id. at 17.
[4] Id. at 15.
[5] Id. at 17. Pamela also points out that she and her aunt were not buying any clothing, so the

Estes v. Wal-Mart
Plaintiff's Trial Brief
3:06-CV-00082-TMB
Page 2 of 7

Pamela's initial reaction was just to go home. The numbness cleared up. Her major concern was whether the fall had affected her still-healing vertebral fusion.

Several days later, however, Pamela experienced pain in her right hip and soreness in her lower back. These problems endured with no significant change for approximately five months.[6]

Fred Meyer's, which had been patiently holding Pamela's job open for her return, finally decided, approximately three months after her fall at Wal Mart, that it could not continue to do that, and notified Pamela that she was terminated. According to Pamela,

> "They're only required to hold your position for so long, and they way surpassed that for me."[7]

Officials at Fred Meyer's explained to Pamela that the company simply had to fill her position.

At the time, as noted, Pamela was still suffering pain from her fall at Wal Mart and was unable to resume her duties at Fred Meyer's.[8]

---

hanger could not have been dropped by her, her aunt, or a clerk at the register dealing with plaintiff or plaintiff's aunt.

[6] At her deposition, Pamela testified that the injury at Wal Mart's "laid me up for almost five months, or at five months, or somewhere around five months.". Id. at 33; see also p. 26. Her surgeon, Dr. Eule, had expected that she would have a three-month setback. The job of natural foods manager required the ability to lift 50 pounds or more.

[7] Id. at 31.

[8] Pamela testified in October, 2006, at her deposition, that she was not capable even at that time of going back and holding a job "right now." Id. at 29. She also testified that she was learning

Pamela has undergone a major change in her life style and recreational activities.  She used to hunt (for caribou), fish, and camp, and play softball.  She ran the Mount Marathon race in Seward, three times.

Depression is a likely factor, and Pamela explains that having spent 15 years in nutrition, she is resistant to the prospect of taking "a chemical drug."  Pamela explained:

> You know, you go through the surgery, you're getting back on your feet, you got a goal now, you're headed down a good road of getting a little more aggressive in your physical therapy, and get back to -- you know, going back to work.  And then you have that happen and you go back and take -- you know, a total turnaround and go backwards.  And you've got to start all over.  That was depressing. and then you get the letter that you're termed in the meantime."[9]

### Contentions.

Wal-Mart owed its customer, Pamela, the duty to use ordinary care to keep its premises in a reasonably safe condition.  *Nicholson v. MGM Corp.*, 555 P.2d 39 (Alaska 1976).

It is more probable than not that the clear hanger, which lay on the floor in the middle of a main pathway for customers and "blended" in with the floor covering, had been there, in a position which created a risk that a customer would fall or trip

---

medical billing and coding in an effort to find a career more compatible with her physical limitations.  Id. at 27.  Since then, Pamela has begun training and working as a court reporter, part time, for a local deposition service.

over it, for long enough so that an alert employee would have removed it, or alerted customers to the risk. Wal-Mart may argue that Pamela was negligent herself in failing to see the hanger, but it is plaintiff's position that a jury is unlikely to conclude that a retail store customer, in checking out near a cashier, has a duty to study the floor for latent or obscure obstacles. It is also unlikely that even if she had done so, the clear hanger would have been visible.

When a party's negligence is directly responsible for physical illness to another, the injured party may recover both for actual physical injury sustained and for concomitant mental and emotional suffering which flow as a natural consequence of the wrongful act. *Am. Jur. 2d*, "Damages", sec. 252. Plaintiff's depression is compensable, because mental suffering caused by physical injury even without pain is compensable[10]. *Holston v. Sisters of the Third Order of St. Francis*, 650 N.E.2d 985 (Ill. 1995). "Depression" is one of the conditions, along with humiliation, fright, anxiety, and stress, which fall within the rubric of "pain and suffering" recoverable as an element of damages in torts. *Capelouto v. Kaiser Foundation Hospitals*, 500 P.2d 880 (Cal. 1972); *C. J. S.*, "Damages", sec. 65.

It should be acknowledged that Wal-Mart may contend that

---

[9] Id. at 50.

plaintiff failed to mitigate the emotional sequels to her fall in its store because she did not seek the help of psychiatry. Wal-Mart, however, would bear, in that regard, the burden of showing that the plaintiff failed to mitigate those problems.

In Alaska, it is not necessary that the plaintiff's evidence establishing causation of "subjective injuries" be proved through expert testimony. *Choi v. Anvil*, 32 P.3d 1 (Alaska 2001).

DATED at Anchorage, Alaska, this 14th day of May, 2007.

s/ Joe P. Josephson
912 W. 6th Ave
Anchorage, AK 99501
(907) 276-0151
Fax: (907) 276-0155
E-mail: jjosephson@aol.com
Alaska Bar No. 6102018

Certificate of Service:
I hereby certify that on the
25th day of May, 2007, a copy
Of foregoing, "Trial Brief
For Plaintiff" was served
Electronically on
William Earnhart

s/ Joe P. Josephson

---

[10] Here, of course, plaintiff experienced severe pain following her fall.

Estes v. Wal-Mart
Plaintiff's Trial Brief
3:06-CV-00082-TMB
Page 6 of 7